UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,　　　　　　　CRIMINAL NO: 05-223 (1-4) (DSD/JSM)

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　REPORT AND RECOMMENDATION

1) HECTOR ALONSO RENTERIA-TORRES
2) CESAR RAMIREZ-LOPEZ
3) ABRAHAM TORRESDEY VEGA
4) GABRIEL YANEZ-VELARDE

　　　Defendants.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon **Defendant Hector Alonso Renteria-Torres's Motions** (1) to Suppress Defendant's Statements [Docket No. 48] and, (2) to Suppress Evidence as Result of Illegal Stop/Seizure [Docket No. 49]; **Defendant Abraham Torresdey Vega's Motions** (1) to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [Docket No. 59], (2) to Suppress All Evidence Obtained from Unlawful Searches and Seizures [Docket No. 60], and (3) to Suppress Statements Made by Defendant [Docket No. 61]; and **Defendant Gabriel Yanez-Velarde's Motion** to Suppress Physical Evidence [Docket No. 73].

Assistant United States Attorney Jeff Paulsen appeared on behalf of the Government; Tina Appleby and Robert Harris appeared on behalf of defendant Hector Alonso Renteria-Torres, who was personally present; Daniel Gerdts appeared on behalf

of defendant Abraham Torresdey Vega, who was personally present; and William Orth appeared on behalf of defendant Gabriel Yanez-Velarde, who was personally present.

Based upon the pleadings, testimony taken from Officer Anthony Fletcher, exhibits submitted at the hearing, pre-hearing submissions, and post-hearing submissions, it is recommended that:

1.   Defendant Hector Alonso Renteria-Torres's Motion to Suppress Defendant's Statements [Docket No. 48] be **DENIED** as moot based on the representations of the Government in its response to defendant's pretrial motions and representations of defendant's counsel at the hearing on the pretrial motions.

2.   Defendant Hector Alonso Renteria-Torres's Motion to Suppress Evidence as Result of Illegal Stop/Seizure [Docket No. 49] be **DENIED** as moot based on the representations of the Government in its response to defendant's pretrial motions and representations of defendant's counsel at the hearing on the pretrial motions.

3.   Defendant Abraham Torresdey Vega's Motions to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [Docket No. 59], to Suppress All Evidence Obtained from Unlawful Searches and Seizures [Docket No. 60], and to Suppress Statements Made by Defendant [Docket No. 61] be **DENIED** as moot based on a letter received from defendant's counsel, dated September 1, 2005, stating that defendant Torresdey Vega intends to plead guilty and the Court need not rule on his pending motions.

4.   Defendant Gabriel Yanez-Velarde's Motion to Suppress Physical Evidence [Docket No. 73] be **DENIED** for the reasons stated in the Memorandum below.

## I.  FACTUAL BACKGROUND

An Indictment was returned against defendant Gabriel Yanez-Velarde charging him with one count of Conspiracy to Distribute Marijuana from May 23, 2005 through June 9, 2005 in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) and one count of Possession with Intent to Distribute Marijuana on June 9, 2005 in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2.

There is one warrant in dispute.  The warrant, submitted and received as Government's Exhibit ("Gov't Ex.") 2, focused on the premises located at 3726 Stevens Avenue South, Minneapolis, Minnesota, and any and all outbuildings, curtilage, assigned storage areas, and garages.  At the hearing on the pretrial motions, Yanez-Velarde stipulated that his motion could be decided solely according to the four corners of the search warrant application.  As such, the sole issue presented to the Court in connection with Yanez-Velarde's motion is whether probable cause existed on the face of the search warrant application.

The facts underlying the present motion are as follows: During the course of the investigation of the four defendants, officers applied for a search warrant of the residence located at 3726 Stevens Avenue South and any and all outbuildings, curtilage, assigned storage areas, and garages.

The search warrant application described the property sought by the warrant as follows:

> Controlled substances to include, but not limited to, Marijuana.  Packaging equipment such as baggies, tin foil, knives, spoons, razors and scales. Documents, notes, papers, ledgers, pagers, cell phones and their displays, computers including hard drives, peripherals and removable

> storage media, and videotapes to show activities of controlled substances distribution and to indicate names, addresses and phone numbers of possible sources and/or customers of controlled substances. Monies to show profit of the sale of controlled substances. Documents, receipts, letters, bills and identification to show constructive possession of the items seized. Firearms.

Gov't Ex. 2.

The relevant portion of the affidavit accompanying the search warrant described the basis for the warrant as follows:

> In this capacity, your affiant has received information through a Confidential Reliable Informant (CRI) on several occasions over the past three-month period. This CRI has given your affiant information regarding a party know to the CRI as "General", who is involved in the distribution of Marijuana. Through an on-going investigation, your affiant has learned that "General" is the person in control of an organized group of individuals that receives quantities of marijuana shipments in excess of 500-600 pounds. These shipments occur on a regular basis in the city of Minneapolis and its surrounding area. This CRI stated he only knows this party by the nickname "General" and does not know his real name. This CRI stated that "General" is a Hispanic Male. The CRI has advised your affiant that on prior occasions the CRI has spoken with "General" over the telephone and in person about large quantities of marijuana arriving in the area.
>
> The CRI has provided your affiant with information about narcotics dealers in the past. The CRI has provided names, addresses, and telephone numbers of people known to be involved in criminal activity. The CRI has made multiple controlled purchases of narcotics under the direction and control of your affiant. Information provided by this CRI to your affiant has been independently corroborated by your affiant and other members of the Hennepin County Sheriff's Narcotics Unit and found to be true and correct.
>
> In the past two week period, your affiant met with this CRI. A short time later, under the direction and control of your affiant, this CRI placed a phone call to "General" a Hispanic Male. Your affiant instructed this CRI to arrange a purchase of a quantity of Marijuana from "General". Your affiant along with other surveillance officers conducted a controlled purchase of Marijuana in which a Hispanic male, later positively identified by the CRI as "General", arrived to sell the quantity of marijuana to the CRI. During this surveillance officers observed this Hispanic Male a.k.a. "General" arrive at 3515 10th Avenue South, exit his vehicle and key

himself into the residence located at 3515 10th Avenue South.  The CRI stated that "General" mentioned he lived in the area.

In the past 72-hour period, your affiant met with this CRI.  A short time later, under the direction and control of your affiant, this CRI placed a phone call to "General" a Hispanic Male.  Your affiant instructed this CRI to arrange a purchase of a quantity of Marijuana from "General".  Upon completion of the phone call the CRI advised your affiant that "General" advised your CRI to meet him in the area of 36th Street and 13th Avenue.

Prior to the phone call, your affiant established surveillance officers near the residence located at 3515 10th Avenue south, Mpls.  Surveillance observed two Hispanic males arrive at the residence driving a tan 1998 Toyota Camry License Plate #NPU-514.  Surveillance positively identified the passenger of this vehicle as the same Hispanic male known as "General" who sold a quantity of Marijuana to the CRI in the past two week period.  Surveillance was maintained on the residence.

Your affiant then established surveillance officers in the area of 36th Street and 13th Avenue, Mpls MN.  Your affiant then searched this CRI for illegal narcotics and U.S. Currency and found nothing.  Your affiant then gave this CRI a quantity of Hennepin County Sheriffs Office buy-fund money to purchase a quantity of marijuana from "General".  A short time later surveillance observed this CRI park his vehicle in the area of the meet spot.  Shortly after that, the unidentified Hispanic male arrived in the Tan Toyota Camry License Plate # NPU-514.  Surveillance observed this CRI get into the vehicle.  Not long after that the CRI exited the vehicle and left the area.  Surveillance was maintained on the unidentified Hispanic Males in the Tan Toyota Camry along with the CRI.  Your affiant then met with the CRI.  This CRI gave your affiant a quantity of Marijuana, which subsequently field-tested positive for marijuana.  Your affiant then searched the CRI for narcotics and U.S. Currency and found nothing.  The CRI positively identified "General" as the Hispanic male who sold him the quantity of Marijuana.  The CRI stated "General" was the passenger in the vehicle.

Surveillance was maintained on the Tan Toyota Camry License Plate # NPU-514.  Surveillance observed this vehicle arrive back at the residence located at 3515 10th Avenue South in Minneapolis and park in the rear.  Both occupants of the vehicle, "General" and the unidentified Hispanic Male, exited the vehicle and entered the residence through the rear.  A short time later, surveillance observed both parties exit the front door of the residence and stand in the front yard.

Surveillance was maintained on the residence located at 3515 10th Avenue South, Minneapolis.  Your affiant then learned from the CRI that

the unidentified Hispanic Male was a partner of "General" and oftentimes assisted in the distribution of large quantities of Marijuana.  Your affiant also learned from the CRI that the residence located at 3515 10th Avenue south is used to store quantities of Marijuana and profits made from the illegal sales and distribution of Marijuana at his residence somewhere in the nearby area.

Your affiant then decided to meet with the CRI again to discuss the purchase of additional quantities of marijuana from these same two Hispanic Males.  While surveillance was being maintained on the residence located at 3515 10th Avenue South, your affiant met with this CRI.  A short time later, under the direction and control of your affiant, this CRI placed a phone call to "General", the same Hispanic Male.  Your affiant instructed this CRI to arrange a purchase of a quantity of Marijuana from "General".  Upon completion of the phone call the CRI advised your affiant that "General" advised your CRI to again meet him in the area of 36th Street and 13th Avenue in approximately 30 minutes.

Directly after the phone call from the CRI to "General" was completed, surveillance at the residence observed the driver of the Tan Toyota Camry License Plate #NPU-514 exit the residence and get into the Camry.  Surveillance was maintained on this vehicle until it arrived at 3726 Stevens Avenue South, Minneapolis.  Officers observed the driver exit the vehicle carrying a brown paper bag with green lettering and key himself into the residence located at 3726 Stevens Avenue South.  A short time later, the same Hispanic male exited the residence carrying the same brown bag with green lettering.  Surveillance noticed that the bag looked noticeably heavier and more full than when the Hispanic Male entered the residence.  Surveillance was maintained on this Tan Toyota Camry License Plate #NPU-514.

Meanwhile, your affiant was meeting with this CRI.  Your affiant had also established surveillance officers in the area of 36th Street and 13th Avenue, Mpls MN.  Your affiant then searched this CRI for illegal narcotics and U.S. Currency and found nothing.  Your affiant then gave this CRI a quantity of Hennepin County Sheriff's Office buy-fund money to purchase a quantity of Marijuana from "General".  A short time later surveillance observed this CRI park his vehicle in the area of the meet spot.  Shortly after that, the unidentified Hispanic male arrived in the Tan Toyota Camry License Plate # NPU-514.  Surveillance observed this CRI get into the vehicle.  The vehicle then drove around the block and returned to the CRI's vehicle.  The CRI then exited the vehicle carrying a brown paper bag with green lettering.  Surveillance observed this bag to be the same bag carried from the house at 3726 Stevens Avenue South by the unidentified Hispanic Male.

> Surveillance also observed the residence directly to the south of 3726 Stevens Avenue South has a sign hanging up advertising "ABC Child Care" at the residence. This residence is located well within 300 feet of the address located at 3726 Stevens Avenue South, where your affiant believes a large quantity of Marijuana is being stored.
>
> Surveillance was maintained on the unidentified Hispanic Male in the Tan Toyota Camry along with the CRI. Your affiant then met with the CRI. This CRI gave your affiant a quantity of Marijuana, which subsequently field-test positive for marijuana. Your affiant then searched the CRI for narcotics and U.S. Currency and found nothing. The CRI positively identified the Hispanic male who sold him the quantity of Marijuana as the same Hispanic Male who drove "General" to meet spot earlier that day.
>
> Surveillance was maintained on the Tan Toyota Camry License Plate # NPU-514. Surveillance observed this vehicle arrive back at the residence located at 3515 10th Avenue South in Minneapolis and park in the front of the residence. The unidentified Hispanic Male exited the vehicle and met with an unidentified Hispanic female in the front yard and exchanged what appeared to be a quantity of U.S. Currency. The two then entered the residence.

Gov't Ex. 2.

On June 2, 2005, the search warrant was issued by Hennepin County District Court Judge Ann Alton and on June 9, 2005 it was executed. Among other evidence found in the search of 3726 Stevens Avenue South, the officers found marijuana, cellophane, a cell phone, billfold from Gabriel Yanez, papers, drug paraphernalia, a notebook and money order receipts, and a 9 mm with two clips.

## II. DISCUSSION

Yanez-Velarde challenged the search and seizure of evidence from 3726 Stevens Avenue South on grounds that there was a lack of probable cause to support the warrant. In response, the Government asserts that the search warrant affidavit clearly established the existence of probable cause to search the location.

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit. Illinois v. Gates, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238 (emphasis added). In reviewing this decision of the issuing court, the duty of this Court is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed. Id. at 238-39 (citation omitted).

In this case, the contents of the search warrant application and supporting affidavit provided probable cause for the search of 3726 Stevens Avenue South. The search warrant application's affidavit states that a CRI notified law enforcement that over the past several months a man named "General," a Hispanic male, was involved in the distribution of large quantities of marijuana. Under the direction of Deputy Fletcher, the CRI performed three controlled buys. For the first controlled buy, the CRI arranged a purchase of marijuana with "General" and "General" arrived to sell a quantity of marijuana to the CRI. For the second controlled buy, the CRI placed a phone call to "General" to arrange the purchase of a quantity of marijuana. "General" advised the

CRI to meet him in the area of 36th Street and 13th Avenue. During this time, surveillance observed two Hispanic males, one identified as "General," arrive at 3515 10th Avenue South, driving a 1998 Toyota Camry, license plate NPU-514. A different surveillance team observed the Toyota Camry arrive in the area of 36th Street and 13th Avenue. The CRI got into the Toyota Camry with the two men, one identified as "General," and exited with a quantity of marijuana. For the third controlled buy, the CRI placed a phone call to "General" to arrange the purchase of a quantity of marijuana and "General" advised the CRI to meet him again in the area of 36th Street and 13th Avenue. Surveillance at 3515 10th Avenue South observed the Toyota Camry drive to 3726 Stevens Avenue South, where the driver exited the vehicle carrying a brown paper bag with green lettering and let himself into the residence. The same Hispanic male exited the residence carrying the same brown paper bag with green lettering, but the bag now appeared heavier and more full than when he entered the residence. The Toyota Camry then drove to the area of 36th Street and 13th Avenue and the CRI got into the vehicle. The Toyota Camry drove around the block and then the CRI exited the vehicle, carrying the same brown paper bag with green lettering that the unidentified Hispanic male carried from the 3726 Steven Avenue South residence. The bag contained a quantity of marijuana. See Gov't Ex. 2. The affidavit also contained information vouching for the reliability of the CRI's information based on the Affiant's previous dealings with this person. Probable cause can be based on the information gathered via a confidential informant if it is "sufficiently reliable." United States v. Thompson, 906 F.2d 1292, 1295-96 (8th Cir. 1990). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of

supplying reliable information, or if its corroborated by independent evidence." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (citing Draper v. United States, 358 U.S. 307, 313 (1959)).  See also United States v. Morales, 238 F.3d 952, 953 (8th Cir. 2001).  In this case, the affiant stated that the CRI had a track record of supplying reliable information and the CRI's tip that a man named "General" was involved in the distribution of large quantities of marijuana was corroborated by independent evidence.

Given this information, a reasonable person could conclude that there was evidence of a crime at 3726 Stevens Avenue South.  The affidavit set forth facts establishing the defendants' drug dealing scheme and connected it to this location.  Therefore, based upon the totality of the circumstances, this Court finds that substantial evidence existed to support the finding of probable cause to issue the search warrant for the items described at the location of 3726 Stevens Avenue South.

### III. RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Defendant Hector Alonso Renteria-Torres's Motion to Suppress Defendant's Statements [Docket No. 48] be **DENIED** as moot based on the representations of the Government in its response to defendant's pretrial motions and representations of defendant's counsel at the hearing on the pretrial motions.

2.     Defendant Hector Alonso Renteria-Torres's Motion to Suppress Evidence as Result of Illegal Stop/Seizure [Docket No. 49] be **DENIED** as moot based on the representations of the Government in its response to defendant's pretrial motions and representations of defendant's counsel at the hearing on the pretrial motions.

3. Defendant Abraham Torresdey Vega's Motions to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [Docket No. 59], to Suppress All Evidence Obtained from Unlawful Searches and Seizures, and to Suppress Statements Made by Defendant [Docket No. 61] be **DENIED** as moot.

4. Defendant Gabriel Yanez-Velarde's Motion to Suppress Physical Evidence [Docket No. 73] be **DENIED**.


Dated: September 1, 2005

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **September 16, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **September 16, 2005**.